Eddie Lee TURNER and Mozella Turner, and others similarly situated, Plaintiffs,

v.

CHICAGO HOUSING AUTHORITY and Vincent Lane, Defendants.

No. 89 C 5801.

United States District Court, N.D. Illinois, E.D.

July 26, 1991.

Timothy Huizenga, Daniel J. Delaney, Susan Comory, Susan Rosenberg, Edwin F. Mandel Legal Aid Clinic, and Catherine MacCarthy and Timothy Huizenga, Legal Asst. Foundation, Chicago, Ill., for plaintiffs.

F. Willis Caruso, James J. Casey, Jill E. Evans, Fred J. Posont, and Bradford T. Yaker, Keck, Mahin & Cate, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This case is a class action brought by certain residents of defendant Chicago Housing Authority ("CHA") challenging CHA's practices of terminating leases based on the conduct of nonleaseholders occurring outside the leaseholder's premises. On March 8, 1991, this court ruled on the parties' cross motions for summary judgment. *Turner v. Chicago Housing Authority*, 760 F.Supp. 1299 (N.D.Ill.1991). At that time, summary judgment was granted in favor of plaintiffs on some claims, other claims were dismissed, and other claims had factual disputes that remained for trial. There being no final and complete judgment, nor any basis for entering a partial judgment, no judgment was entered at that time. The parties were ordered to file amended proposed findings of fact and conclusions of law. A trial was held from April 3, 1991 through April 5, 1991. On April 26, 1991, this court issued its findings of fact and conclusions of law which resolved all remaining issues. The parties were directed to prepare a proposed judgment order granting plaintiffs declaratory and injunctive relief on two of their claims and dismissing the remaining claims with prejudice. A final judgment order dated May 16, 1991 was entered on the docket on May 17, 1991. Plaintiffs made no express objection to the March 8 ruling on summary judgment in their amended findings of fact, during the trial, nor when the proposed judgment order was entered. On May 28, 1991, plaintiffs served defendants with their motion for reconsideration pursuant to Fed.R.Civ.P. 59(e). The motion was presented in open court on May 30, 1991. On Monday June 17, 1991, prior to completion of briefing on the motion for reconsideration, plaintiffs filed a notice of appeal, representing that this was a precaution in the event that the court adopted defendants' argument that the reconsideration motion was untimely under Rule 59(e). As is discussed below, the Rule 59(e) motion was timely and therefore the notice of appeal was premature and did not deprive this court of jurisdiction to rule on the pending motion.[1]

Defendants contend the motion to amend is untimely because it challenges the March 8 and April 26 orders, not the judgment that was entered on May 17. The March 8 and April 26 orders, however, were not judgments. The only judgment entered in this case was the one entered on May 17. Rule 59(e) permits the filing of motions for reconsideration within 10 days (meaning 10 court days, Fed.R.Civ.P. 6(a)) after the entry of judgment. Since filed within 10 days of the only judgment entered in the case, the motion was timely under Rule 59(e) meaning this court has jurisdiction to consider it and the time for filing any notice of appeal does not run until the motion is ruled upon. *Lorenzen v. Employees Retirement Plan of Sperry*

---

1. Fed.R.App.P. 4(a)(4) provides that: "If a timely motion ... is filed ... under Rule 59 to alter or amend the judgment ..., the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

926

& *Hutchinson Co.*, 896 F.2d 228, 231 (7th Cir.1990); *Daniels v. Brennan*, 887 F.2d 783, 789 n. 6 (7th Cir.1989); *Charles v. Daley*, 799 F.2d 343, 346–47 (7th Cir.1986). While plaintiffs' motion to amend is timely, the better practice, more consistent with judicial economy, is to seek reconsideration shortly after the interlocutory order, prior to judgment.[2] In this case, for example, granting of reconsideration at the present time might require permitting the parties to present additional evidence. Any such potential problem could have been avoided if plaintiffs had moved for reconsideration of the summary judgment motion prior to the holding of the trial or, at least, during trial. In any event, the motion to alter or amend will be considered.

██ Defendants contend that the issues raised in plaintiffs' motion are inappropriate issues on reconsideration. A motion for reconsideration is appropriate when

the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). It is also appropriate when a legal error has been committed due to inadvertence or misapprehension. *See Waunakee*, 906 F.2d at 1191–92 (quoting *Belmont v. Erie Ry.*, 52 Barb. 637, 641 (N.Y.App.Div.1869)). Also, where a timely Rule 59(e) motion is filed, the court may enlarge the issues beyond those raised by

the movant. *Charles*, 799 F.2d at 347; Wright & Miller, § 2817 at 192 & n. 34. Ignoring legal error brought to the court's attention would put the parties through the unnecessary hoop of having to appeal the case to get the error corrected. Thus, a "Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law." *United States Labor Party v. Oremus*, 619 F.2d 683, 687 (7th Cir.1980). *Accord Danenberger v. Johnson*, 821 F.2d 361, 363 (7th Cir.1987). *See also Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1155 (9th Cir.1988) ("a motion for reconsideration of a summary judgment is appropriately brought under rule 59(e)"); *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657, 660 (8th Cir.1987) (Rule "59(e) provides a means 'to support reconsideration [by the court] of matters properly encompassed in a decision on the merits.' *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). Under rule 59(e) the court may reconsider issues before it, *see id.*, and generally may examine the correctness of the judgment itself.").

██ While a Rule 59(e) motion is a proper procedure for bringing to the court's attention any legal errors in the proceeding, relief is not appropriate if the issue was not properly addressed during the proceedings. A Rule 59(e) motion is not ordinarily the appropriate mechanism for raising new issues that could have been raised during the pendency of the original proceeding. *See Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fidelity Insurance*, 561 F.Supp. 656, 665–66 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir.1984));

**2.** Although there is no Federal Rule of Civil Procedure expressly providing for motions for reconsideration prior to the entry of judgment, this court still has the inherent authority to reconsider its decisions at any time it still has jurisdiction over the case. *See A. Hollow Metal Warehouse v. United States Fidelity & Guaranty Co.*, 700 F.Supp. 410, 411–12 (N.D.Ill.1988). *See also* C.A. Wright & A. Miller, *Federal Practice & Procedure* § 2817 at 108 (1973) (Rule 59(e) was

codification of prior holdings that court had inherent power to reconsider its judgments. Many litigants, adopting the standard set by Rule 59(e), bring reconsideration motions within 10 days of an interlocutory order. That custom, while a good practice, does not prevent a court from considering reconsideration motions brought more than 10 days after an interlocutory order. *Hollow Metal, supra.*

*Friedman*, 824 F.2d at 660; *DeBruyne v. Equitable Life Assurance Society of the United States*, 920 F.2d 457, 471 (7th Cir. 1990); *Morgan v. Harris Trust & Savings Bank of Chicago*, 867 F.2d 1023, 1028 (7th Cir.1989); *Waunakee*, 906 F.2d at 1192; *Wielgos v. Commonwealth Edison Co.*, 127 F.R.D. 135, 138 (N.D.Ill.), *aff'd*, 892 F.2d 509 (7th Cir.1989).

■ As was noted in the ruling on summary judgment, the parties agreed that the substantive due process claim included a third element. *Turner*, 760 F.Supp. at 1309.[3] Plaintiffs were required to "show either that there is a violation of some other substantive constitutional right or that state law remedies are inadequate." *Id.* On reconsideration, however, plaintiffs argue for the first time that they need not prove this third element because it only applies to unauthorized or random acts. If plaintiffs had raised this argument prior to trial or even in amended proposed conclusions of law submitted at trial, it would have been fully considered. Raising the issue for the first time after judgment has already been entered, however, is too late. This ground for reconsideration will not be considered.[4]

Plaintiffs also argue that they established that their First Amendment rights to associate with their families were interfered with and concomitantly satisfied the third element of their substantive due process claims by establishing the violation of this substantive constitutional right. Plaintiffs contend that this court improperly applied an equal protection standard in determining there could be no infringement of the right to associate where the same rule was applied to both family members and non-family members. *See* April 26, 1991 Order at 14 ("Since this court finds that defendants do not treat family members differently than other occupants or guests (Finding of Fact 52), there is no violation of associational rights.").[5]

3. In responding to defendants on the summary judgment motions, plaintiffs argued the state court procedures were inadequate and that a substantive right was violated. They in no way questioned that there was a third element to their substantive due process claim. Plaintiffs' Memorandum in Response to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment at 13–15.

4. There is no law contrary to the court's ruling. There is nothing in *Polenz v. Parrott*, 883 F.2d 551, 557–58 (7th Cir.1989), or *New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990), to indicate that the holdings of those cases are limited to unauthorized or random acts and inapplicable to acts pursuant to a custom or policy. Moreover, plaintiffs characterize *Burnham* as not involving any allegation of policy or custom. It is, however, a suit concerning denial of a building permit brought against the Village's mayor, chairman of the Plan Commission, and president of the Board of Local Improvements and a trustee of the Village in their individual and *official* capacities. These would appear to be policymaking officials. *See also, e.g., Jones v. Doria*, 767 F.Supp. 1432 (N.D.Ill.1991). It is recognized that *Kauth v. Hartford Insurance Co. of Illinois*, 852 F.2d 951, 956–58 (7th Cir.1988), shows that part of the justification for the third element is to avoid undermining *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which hold that there is no *procedural* due process claim if an adequate postdeprivation remedy is available. It is true that that rule applies only to unauthorized and random acts, *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991), and therefore would not be undermined if substantive due process were held to be applicable to claims of irrational denial of property pursuant to an official policy even when an adequate state law remedy existed. The Seventh Circuit, however, generally has not upheld substantive due process claims based on property deprivations, *see Polenz*, 883 F.2d at 557, and has made it clear that there must be something more than just an allegedly irrational action. So far the Seventh Circuit has pointed to only two possible means of overcoming the hurdle, proving the action was committed pursuant to a custom or policy is not one of them. Were the issue properly before this court, it is doubtful that this court would expand the law absent an indication to that effect from the Seventh Circuit. Also, since the present case involves *pre*deprivation remedies, not *post*deprivation remedies, it is questionable whether the exception for acts pursuant to a policy or custom would apply even if this were a procedural due process case.

5. This conclusion was consistent with the ruling on summary judgment. *See Turner*, 760 F.Supp. at 1309 ("As regards the third element, there is a factual dispute as to whether defendants interfered with plaintiffs' associational

■ There is no disagreement with plaintiffs' statement of the law as providing that persons "have a constitutionally protected right to associate with members of their families and other intimate relatives" and that it violates this right to "terminat[e] a leaseholder's tenancy based *solely* on a leaseholder's association with a family member." Plaintiffs' Memorandum in Support of Motion to Alter or Amend at 2 (emphasis added). As stated in Finding of Fact 52, "CHA does not have a policy of holding tenants responsible for acts of relatives that is different from the policy applied to other nonoccupants or guests. In particular, Turner and Donner were not held responsible for the acts of each's respective son because of the relationship, but because CHA employees believed the sons were occupants or guests of their mothers." April 26, 1991 Order at 12. Thus, the reference to difference in treatment was not a reference to equal protection, but a reference to lack of proof of an improper intent or purpose behind the policy under consideration. There were no facts to support that defendants held leaseholders responsible for the conduct of others because of a family relationship. Instead, defendants followed a policy of terminating leases based on the off-premises conduct of an occupant or guest, regardless of whether the occupant or guest was or was not a relative. There is no evidence to support that this policy was directed at family members.

Of course, the occupant or guest for whom the leaseholder was held responsible was sometimes, if not often,[6] a relative. Plaintiffs, however, point to no cases holding that the right to associate with one's family is implicated because a particular rule happens to be applied to members of a family. To the contrary, defendants point to *Hameetman v. City of Chicago*, 776 F.2d 636 (7th Cir.1985). In that case, the

Seventh Circuit considered the existing precedents and concluded:

> state or local regulations are not unconstitutional deprivations of the right of family association unless they regulate the family directly,.... The collateral consequences of regulations not directed at the family ... do not bring the constitutional rights of family association into play .... we can find no case invalidating a regulation merely because it might, as in the present case, have the incidental and unintended effect of inducing family members to live apart.

*Id.* at 643. At most plaintiffs proved only an incidental effect on family association that does not implicate that right.

For the foregoing reasons, plaintiffs' motion for reconsideration is denied.

IT IS THEREFORE ORDERED that plaintiffs' motion to alter or amend the judgment is denied.

---

rights by treating the conduct of nonresident family members differently."). *See also id.* at 1305 ("As the case now stands, it is a disputed factual issue as to whether defendants have a policy of holding tenants responsible for acts of relatives that is different from the policy applied to other nonoccupants or guests."). The proper procedure would have been to address any disagreement with this holding in the amended

findings of fact and conclusions of law or otherwise at trial. Nevertheless, the issue will be fully considered on its merits.

**6.** Plaintiffs made no attempt to prove how frequently the third party for whom the leaseholder was held responsible was a family member.